UNITED STATES of America

v.

Fred M. RABENA et al.

Crim. No. 70–664.

United States District Court,
E. D. Pennsylvania.

March 21, 1972.

George F. Kelly, Atty., United States Dept. of Justice, Philadelphia, Pa., for plaintiff.

Nino V. Tinari, Lorch, Ryan, Peruto, Vitullo & Tinari, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

JOHN W. LORD, Jr., District Judge.

The defendants have been convicted by a jury pursuant to a two count indictment charging them with violating 18 U.S.C.A. § 894 (Supp.1972) and 18 U.S.C.A. § 1952. Immediately upon the recording of the verdict, the Government moved that each of the defendants be held without bail pending imposition of sentence, pursuant to 18 U.S.C.A. § 3148 (Supp.1972). The Court set Monday, March 20, 1972 for a hearing with regard to the merits of the Government's motion. After an extensive trial and a thorough Bail Revocation Hearing, we make the following:

## FINDINGS OF FACT

1. On March 13, 1972, each of the defendants was convicted by a jury sitting in the Eastern District of Pennsylvania of violations of 18 U.S.C.A. § 894 (Supp.1972), "Collections of Extensions of Credit by Extortionate Means," and 18 U.S.C.A. § 1952, "Interstate Travel in Aid of a Racketeering Enterprise: Extortion."

2. The extortion of which defendants were convicted arose from a gambling debt owed to defendant Fred M. Rabena by Martin Bruskin in the amount of $845.00.

3. There was evidence introduced at trial from which the jury could have found:

(a) That Joseph Rota threatened Martin Bruskin in an attempt to collect this debt.

(b) That Fred Rabena threatened Martin Bruskin's sister in an attempt to collect this debt.

(c) That during the evening of October 19, 1970, Fred Rabena and Joseph Rota took Martin Bruskin by force from Philadelphia, Pennsylvania to the St. George Motel in Cherry Hill, New Jersey.

(d) That while enroute, Martin Bruskin was beaten by Joseph Rota.

(e) That Martin Bruskin was held captive by Fred Rabena, Joseph Rota and Phillip LaPlaca at gunpoint and was beaten periodically.

(f) That Martin Bruskin was forced to call his father, Harry Bruskin, in an attempt to satisfy the debt.

(g) That Fred Rabena and Joseph Rota went to Harry Bruskin's store to receive payment while Martin Bruskin was still being held captive by Phillip LaPlaca.

(h) That agents of the Federal Bureau of Investigation placed Fred Rabena under arrest at the time he called upon Harry Bruskin for the purpose of collecting the money.

(i) That Joseph Rota fled when confronted with arrest by agents of the Federal Bureau of Investigation, who properly identified themselves.

4. The evidence discussed above was the subject of vigorous cross-examination and lengthy arguments to the jury by able defense counsel. Furthermore, the defense called several witnesses to testify, including the defendants, whose testimony contradicted some of the evidence set forth above. However, by its verdict of guilty, the jury apparently gave little credence to this testimony and could have found the facts substantially as stated above.

5. While on pre-trial bail for this offense, defendants Fred Rabena and Phillip LaPlaca have been indicted for dealing in dangerous drugs by a Federal Grand Jury in the District of New Jersey.

6. Defendants Fred Rabena, Joseph Rota and Phillip LaPlaca have been as-

sociated with a group engaging in the illegal traffic of dangerous drugs.

7. Defendant Joseph Rota was indicted for attempted grand larceny by a Gloucester County, New Jersey Grand Jury, such attempted larceny allegedly committed on August 10, 1971, a time when Joseph Rota was released on bail pending trial of this case.

8. Defendant Joseph Rota failed to appear at an extradition hearing held in Philadelphia, Pennsylvania on February 2, 1972 involving the indictment mentioned in paragraph 7.

## DISCUSSION

The applicable statute, 18 U.S.C.A. § 3148 (Supp.1972) provides in pertinent part:

> A person . . . who has been convicted of an offense and is either awaiting sentence or sentence review . . . or has filed an appeal . . shall be treated in accordance with the provisions of section 3146 unless the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger is believed to exist . . . the person may be ordered detained.

■ This section provides that persons convicted of crimes are to be treated in the same manner as persons awaiting trial unless there is reason to believe that the above dangers exist and that there are no conditions of release as enumerated in 18 U.S.C.A. § 3146(a) designed to prevent their occurrence. The Court is authorized to consider such factors as the demeanor of the defendants at trial, the facts of the case, any patterns of behavior which may reflect on the defendants' future conduct, and the likelihood of the defendants' committing future unlawful acts while released on bail. *See,* United States v. Porter, 297 F.Supp. 1117, 1119 (D.D.C.1969); United States v. Erwing, 268 F.Supp. 877, 879 (N.D.Cal.1967). After exten-

sive consideration, we find that defendants' bail must be revoked.

■ The Court is appalled at the extremely violent nature of the acts for which the defendants stand convicted, acts which must surely strike out at the conscience of law abiding citizens everywhere. Implicit in the jury's determination of guilt was a finding that Martin Bruskin was kidnapped, beaten, tormented and threatened to the extent that he feared for his very life. This finding alone could justify our conclusion that these defendants must be detained. *See,* United States v. Porter, *supra,* at 1119, where defendant's acts of committing a street robbery with nothing more persuaded the court to revoke bail.

However, we need not concern ourselves with this one fact. This case presents us with several more factors which justify our revoking defendants' bail. Each of the defendants has been associated with a vast network engaging in the illegal traffic of dangerous drugs. Two of the defendants, Fred Rabena and Phillip LaPlaca have already been indicted for such illegal activities while released on bail pending the trial of this case. The third defendant, Joseph Rota, has also been indicted for an offense, attempted grand larceny, while released on bail pending this trial. We find that there is ample authority to justify our finding that defendants' bail must be revoked. *See,* United States v. Rispo, No. 71–1579 (3rd Cir. August 2, 1971) where bail was revoked as to defendants who were arrested and charged with sales of counterfeit currency while released pending post-conviction proceedings; United States v. Louie, 289 F.Supp. 850, 852 (N.D.Cal.1968) where several pending criminal proceedings were considered to be a danger to the community to justify revocation of bail.

In addition, the Court considers the association of these defendants in illegal narcotics traffic of great significance. Certainly, the effect on the community of the sale of dangerous drugs speaks for itself. Furthermore, the clandestine

nature in which such drugs are sold indicates that there is a great likelihood that such illegal activity will continue. *See,* United States v. Lawson, Cr. No. 71–53, p. 3 (E.D.Pa. December 9, 1971) (Huyett, J.). And once it is considered likely that such illegal activity will resume if defendants are released on bail so as to endanger the safety of the community, then bail should be denied. Hansford v. United States, 122 U.S.App. D.C. 320, 353 F.2d 858 (1965) cited in United States v. Erwing, *supra,* at 878.

We must also note the danger to Martin Bruskin. It was primarily his testimony which led to the conviction of these three defendants. We find that we are justified in believing that if these defendants are released, Martin Bruskin's physical well being would be in jeopardy.

We find that no one or more of the conditions enumerated in 18 U.S.C.A. § 3146(a) will reasonably assure that these defendants will not pose a danger to the community or to Martin Bruskin. Nor can we imagine any condition of release which counsel or the Court devises which can achieve the same purpose.

Finally, these defendants face a maximum sentence of 25 years imprisonment, which leads us to believe there is a risk of flight which cannot be minimized. United States v. Lawson, *supra,* at p. 2, and this fact alone has been held to justify detention pending appeal. *Cf.* United States v. Jackson, 297 F.Supp. 601, 603 (D.Conn.1969). However, here the defendant Joseph Rota fled when confronted by agents of the Federal Bureau of Investigation who testified that they properly identified themselves. In addition, defendant Joseph Rota failed to appear at an extradition hearing held in Philadelphia, Pennsylvania involving the alleged attempted grand larceny in New Jersey. Certainly, the Court has sufficient evidence to have reason to believe that Joseph Rota may flee. And in view of the possibility of a lengthy incarceration, it is not unreasonable for us to find that such a risk of flight also applies to the two other defendants. This finding, when coupled with our prior findings that release of these defendants pending sentence would result in a danger to the community and to Martin Bruskin, clearly justifies revocation of bail and immediate detention.

## CONCLUSIONS OF LAW

1. The Court has reason to believe that these defendants pose a danger to the community.

2. The Court has reason to believe that these defendants pose a danger to Martin Bruskin.

3. The Court has reason to believe that no one or more of the conditions enumerated in 18 U.S.C.A. § 3146(a), or any condition devised by counsel or the Court, will reasonably assure that these dangers will not occur.

4. The Court has reason to believe that there is a risk that these defendants will flee.

5. The Court is authorized pursuant to 18 U.S.C.A. § 3148 (Supp.1972) to order that these defendants be detained pending imposition of sentence.