**UNITED STATES of America**

v.

**Rufino Orlando MORALES.**

**Crim. No. 80–250(PG).**

United States District Court,
D. Puerto Rico.

June 24, 1981.

José R. Aguayo, Asst. U.S. Atty., Hato Rey, P.R., for plaintiff.

Luis Carbone, Jr., Víctor Gutiérrez-Fernández, Hato Rey, P.R., for defendant.

## MEMORANDUM AND ORDER

PEREZ-GIMENEZ, District Judge.

### THE FACTS:

This case began with the filing on November 12, 1980, of an indictment charging Mr. Rufino O. Morales and one Nellie Lora[1] with a conspiracy to import approximately 2,093.7 grams of cocaine, in violation of Title 21, U.S.C., Sections 952(a) and 963.[2] An arrest warrant was issued against Mr. Morales pursuant to said indictment and bail was set at $200,000 cash. Subsequently, on December 1, 1980, Mr. Rufino Morales was arrested in Miami, Florida. On December 5, 1980, removal proceedings[3] were held in the Southern District of Florida, as a result of which the defendant was ordered removed to the District of Puerto Rico. At said time defendant's bond was modified as follows: $100,000 surety bond and $100,000 personal surety bond "to be secured with a note and mortgage on defendant's sister-in-law's home in Miami."

Once defendant arrived in this District, a Motion for Reduction of Bail was filed on December 17, 1980, and at a hearing in chambers before a U.S. Magistrate the possibility of posting a $150,000 surety bond was discussed. Finally, on December 24, 1980, a $125,000 surety bond[4] was deposited in the Clerk's Office on behalf of defendant by Mr. Pablo Tapia Rosado and Mrs. Antonia Fuentes Suárez, acting as sureties. Prior to posting bond, the sureties appeared at the Clerk's Office, where they were fully advised in the Spanish language of their obligations under the bond. Thereafter, they both signed various documents[5] in the company of Mr. Rufino Morales and the defendant was released on bond. Other conditions or restrictions were placed on defendant, but for the purposes of this Memorandum and Order we will only concern ourselves with his failure to appear at trial.

The arraignment was held on December 31, 1980, and the defendant was present with his attorney.[6] Various motions were filed afterwards, but of no consequence to our present purpose. On January 16, 1981, a status conference was held where defendant's attorney at that time, Mr. Víctor Gutiérrez, was advised to inform attorney of record, Mr. Luis Carbone, that jury trial was set for February 24, 1981, at 9:00 A.M., and that the same would not be changed. On January 27, 1981, Harold F. Keefe, Esquire, Coral Gables, Florida, appeared as additional counsel of record for defendant, together with Mr. Luis Carbone. It is important to note that upon granting Mr. Keefe's appearance of record, by footnote

---

1. At present, defendant Nellie Lora has not been arrested and remains as a fugitive.

2. Section 952(a) provides in part:

    "(a) It shall be unlawful ... to import into the United States from any place outside thereof, any controlled substance in schedule I or II. ..."

    Section 963 provides:

    "Any person who attempts or conspires to commit any offense defined in this subchapter, is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or the conspiracy."

    Section 812 of Title 21 classifies cocaine as a narcotic drug controlled substance within Schedule II.

3. The removal proceedings were conducted under the provisions of Rule 40(b) which sets forth the procedures to be followed when a person is arrested in a district distant from the originating district.

4. The sureties, who are married to each other, posted two properties belonging to them: one located at No. 25 Muñoz Rivera St., Vega Alta, P. R.; and the other at Road No. 678, Pampanos Ward, Vega Alta, P. R. The appraised value of each, as determined by the Clerk of the Court, is $95,000 and $85,000 respectively.

5. The documents signed by Mr. Pablo Tapia Rosado and Antonia Fuentes Suárez consisted of an Appearance Bond (also signed by defendant) under oath; a Justification of Surety (I), also under oath; and a Justification of Surety (II).

6. At this time Mr. Rufino Morales was represented by Messrs. Víctor Gutiérrez and Luis Carbone, the latter absent from Puerto Rico, but scheduled to be back on January 20, 1981.

order dated January 29, 1981, the Court specifically provided that said appearance would not be grounds for continuance of the trial date as previously set. A motion for continuance of trial was filed by defendant on February 19, 1981, which was denied by the Court on that same date.

That is how things stood on February 24, 1981, when the case was called for trial. Defendant failed to appear, but at this time the Court did not order defendant arrested in view of the information offered to the Court by his attorney, Mr. Carbone.[7] The case was continued until February 25, 1981, at which time the defendant failed to appear and a bench warrant was issued for his arrest. Additionally, orders to show cause were issued against the sureties to show cause why the $125,000 surety bond should not be forfeited. The Government was ordered to file a motion requesting that the surety bond be forfeited.[8]

THE LAW:

■ "The starting point for determining the extent of the sureties' obligation is 'the language of (their) undertaking' ", *U. S. v. Carr*, 608 F.2d 886, 888 (1 Cir., 1979), interpreted in light of federal law principals which govern the interpretation of federal bail bonds. *U. S. v. Catino*, 562 F.2d 1 (2 Cir., 1977); *U. S. v. Miller*, 539 F.2d 445 (5 Cir., 1976). The bond[9] signed by the sureties on December 24, 1980, specifically required the defendant "to appear" in the Judicial District of Puerto Rico ". . . in accordance with any and all orders and directions relating to the defendant's appearance . . . as may be given or issued . . . by the U. S. District Court . . .". Clearly, this Court's Order of January 16, 1981, setting the trial for February 24, 1981, is such

an order as encompassed in the Appearance Bond.

■ Further, the bond made it patently clear that ". . . if the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith. Forfeiture of this bond for any breach of its conditions may be declared by any United States District Court having cognizance of the above entitled matter at the time of such breach . . .". Such was the extent of the sureties' obligation at the time they signed the Appearance Bond. *U. S. v. Carr, supra.* The bond further provided that if such a breach of conditions occurred, judgment would be entered against each debtor jointly and severally, execution being made according to the Federal Rules of Criminal Procedure (See Appendix).

■ The relationship that spawns when an Appearance Bond is signed is that of contract between the Government and the sureties. *U. S. v. Plechner*, 577 F.2d 566 (9 Cir., 1978); *U. S. v. Lujan*, 589 F.2d 436 (9 Cir., 1978), reh. den. 1979; *U. S. v. Miller, supra*, reh. den., 542 F.2d 576 (5 Cir., 1976). The wording of the bond makes the intention and commitment of the sureties manifest, and like any other contract, the bail bond should be interpreted to give effect to the reasonable intentions of the parties. As a general rule the terms of a bail contract are to be construed strictly in favor of the surety. *U. S. v. Miller, supra.*

■ Even though the jurisprudence favors the surety in the interpretation of the bail contract, the plain language of Rule

---

7. The minutes of the Court for February 24, 1981, show that Mr. Luis Carbone informed the Court that he had spoken with defendant who was still in Miami because he could not get a flight to Puerto Rico the previous night (Monday, February 23).

8. The transcript of the proceedings had in Court on February 25 shows that defendant knew since the beginning of the month of February that he was to stand trial on February 24 (Tr. p. 6, lines 23–25; p. 7, lines 1–9). On page

8, Mr. Carbone explained to the Court the results of two telephone conversations he had with the defendant and his wife on Monday, February 23, and Tuesday, February 24, respectively. In this latter conversation defendant's wife expressed surprise that defendant was not in Puerto Rico "because supposedly he had left in (sic) the eight o'clock flight" (Tr. p. 8, lines 21–23).

9. Copy of the Appearance Bond is made an Appendix to this Memorandum and Order.

46(e)(1)[10] makes forfeiture mandatory where there has been a breach of a condition of bond. *U. S. v. Stanley,* 601 F.2d 380 (9 Cir., 1979); *U. S. v. Ryan,* 580 F.2d 151 (5 Cir., 1978); *U. S. v. Nolan,* 564 F.2d 376 (10 Cir., 1977). It is precisely this Rule which establishes the procedures which are to be followed by federal courts for the enforcement of liability of surety. *U. S. v. Vera-Estrada,* 577 F.2d 598 (9 Cir., 1978); *U. S. v. Boothman,* 498 F.Supp. 798 (D.Kan., 1980).[11] Where the bond agreement has been breached by defendant's failure to appear for trial, as in this case, the surety then becomes absolutely liable to the government in the amount of the bond. *U. S. v. Foster,* 417 F.2d 1254 (7 Cir., 1969).

█ The mere fact that the defendant may appear in Court on the day following the breach of a condition of the bond, does not relieve the Court from its mandatory duty under Rule 46(e)(1). *Appearance Bond Surety v. U. S.,* 622 F.2d 334 (8 Cir., 1980). Neither does the surety cease to be absolutely obligated to the government. It is the breach itself that triggers the mandatory declaration of the forfeiture pursuant to Rule 46(e)(1). Whatever may transpire afterwards may be the basis for a request for remission.[12]

After the defendant failed to appear for his trial and the Court issued an order to show cause against the sureties, a hearing was held on March 27, 1981, at which time the sureties appeared represented by counsel. Although the sureties are not entitled to notice of their principal's failure to appear, *U. S. v. Vera-Estrada, supra; U. S. v. Márquez,* 564 F.2d 379 (10 Cir., 1977), the Court did allow the sureties to avail themselves of the opportunity to come before the Court prior to the issuance of the order of forfeiture. The sureties were heard and they were granted an additional term of thirty days to file an affidavit with the Court explaining the steps[13] they had taken to secure the presence of the defendant in Court and to file any memorandum of law as to why forfeiture should not be entered. Nothing further has been filed, even at this late date.

The obligation assumed by the sureties in this and any other appearance bond filed in federal courts are not to be taken lightly. The Court expects that the sureties, whether professionals, next door neighbors, mere acquaintances, or total strangers, will be watchful in keeping with their obligations to make sure that defendants will appear in court every time they are summoned to do so. Even more so, as in a case like the present, where the defendant is a resident alien, and lives in another district from their own. The knowledge that the sureties had of defendant's background, occupation and mode of living, was nil. They failed in the essence of their undertaking under the bond contract.

We echo what other courts have said referring to the penalty of forfeiture:

---

10. F.R.Cr.P. 46(e) reads in its pertinent part:
"(e) Forfeiture.
"(1) If there is a breach of condition of a bond, the district court *shall* declare a forfeiture of the bail...." (Underlining ours)

11. Although the Court originally released the defendant on bond pursuant to the provisions of the Bail Reform Act of 1966, 18 U.S.C. 3141 et seq., and more specifically Section 3146, the forfeiture proceedings must be conducted under the aegis of Rule 46, F.R.Cr.P. For a well reasoned opinion wherein the interplay among the Bail Reform Act of 1966, Rule 46, and the inherent powers of the Court in relation to bail is expounded, see Judge Renfrew's Opinion in *U. S. v. Stanley,* 601 F.2d 380 (9 Cir., 1979). Also, *U. S. v. Boothman,* 498 F.Supp. 798 (D.Kan., 1980).

12. F.R.Cr.P. 46(e)(4) reads:
"Remission. After entry of such judgment, the court may remit it in whole or in part under the conditions applying to the setting aside of forfeiture in paragraph (2) of this subdivision." Paragraph (2) of Rule 46(e)(2) provides:
"Setting Aside. The court may direct that a forfeiture be set aside, upon such conditions as the court may impose, if it appears that justice does not require the enforcement of the forfeiture...."

13. The burden is on the surety, not on the government, to produce the defendant, or forfeit the bond. *U. S. v. Brizuela,* 508 F.2d 386 (9 Cir., 1974).

"The sanction of a forfeiture is required not only to vindicate the public interest, but to assure that sureties, whether professional or family and friends, will be vigilant at all times to assure the appearance of defendants if and when required. The failure of a defendant to so appear is an interference with the due, prompt and efficient administration of justice; this is an injury to the public, entirely apart from any expense to which the government is put to apprehend the defendant." *U. S. v. Burnett*, 474 F.Supp. 761, 763 (S.D.N.Y., 1979).

Motion for forfeiture is GRANTED. The Clerk shall enter judgment thereon.

IT IS SO ORDERED.

## APPENDIX

CR 17
(Rev. 9/78)

### APPEARANCE BOND

# United States District Court

## FOR THE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>Rufino Orlando Morales | APPEARANCE BOND<br>FOR<br><br>No.    Cr. 80-250 |

*Non-surety:* ☐ I, the undersigned defendant, acknowledge that I and my . . .
*Surety:* ☒ We, the undersigned, jointly and severally acknowledge that we and our

personal representatives, jointly and severally, are bound to pay to the United States of America the sum of $ 125,000.00 /and there has been deposited in the Registry of the Court the sum of $ in cash /or in properties , , (describe other security)/ a sum not exceeding 10% of the amount of the bond /

The conditions of this bond are that the defendant   Rufino Orlando Morales
is to appear before   --------------- , United States Magistrate for the

Judicial          District of  Puerto Rico , at  San Juan, Puerto Rico       , and in the

United States District Court for the  Judicial          District of  Puerto Rico       at

San Juan                    , and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in the above entitled matter as may be given or issued by the magistrate or by the United States District Court for the  Judicial        District of  Puerto Rico  or any other United States District Court to which the defendant may be removed or the cause transferred; that the defendant is not to depart

the  Judicial        District of  Puerto Rico    , or the jurisdiction of any other United States District Court to which the defendant may be removed or the cause transferred after he has appeared in such other district pursuant to the terms of this bond, except in accordance with such orders or warrants

as may be issued by the magistrate or the United States District Court for the    Judicial

District of    Puerto Rico        or the United States District Court for such other district; that the defendant is to abide any judgment entered in such matter by surrendering himself to serve any sentence imposed and obeying any order or direction in connection with such judgment as the court imposing it may prescribe.

If the defendant appears as ordered and otherwise obeys and performs the foregoing conditions of this bond, then this bond is to be void, but if the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith. Forfeiture of this bond for any breach of its conditions may be declared by any United States District Court having cognizance of

the above entitled matter at the time of such breach and if the bond is forfeited and if the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each debtor jointly and severally for the amount above stated, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and by other laws of the United States.

It is agreed and understood that this is a continuing bond (including any proceeding on appeal or review) which shall continue in full force and effect until such time as the undersigned are duly exonerated.

This bond is signed on this   24th   day of   December       19 90

at        San Juan, Puerto Rico

Name of Defendant   Rufino Orlando Morales       Address.   134, 45 S. W., 105th
                                                                       Miami, Florida  33176
Name of Surety.   Pablo Tapia Rosado           Address.   Road 678, K. O, H.6
                                                                       Espinosa Ward, Vega Alta, P. R.
Name of Surety.   Antonia Fuentes Suárez        Address.   Road 678, K.O, H.6
                                                                       Espinoas Ward, Vega Alta, P. R.
                                                                       Tel:883-2275 or 883-4135
Signed and acknowledged before me this 29th day of December         1980

                                               RAMON A. ALFARO, Clerk of the Court

Approved: _____       By: _____
                                                            Deputy Clerk

¹ Where no deposit is required delete the remainder of this paragraph
² Where no sureties are required, indicate full amount of cash deposited in registry.
³ If a form of security other than cash is deposited, describe.
⁴ If the amount ordered to be paid exceeds 10 percent of the bond, delete.
⁵ Insert place

FPI-LOM-10-78-30M  1693