# ALLEGHENY MUTUAL CASUALTY COMPANY v. STATE OF MARYLAND

[No. 601, September Term, 1976.]

*Decided February 9, 1977.*

The cause was argued before GILBERT, C. J., and MENCHINE and LOWE, JJ.

*William T. Wood*, with whom were *Wood & Longest* on the brief, for appellant.

*W. Timothy Finan, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County*, and *Laurence Beck, Assistant State's Attorney for Montgomery County*, on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

The abrupt cessation of the policy of benign neglect in enforcing bail forfeitures, wittingly or unwittingly allowed by the State's Attorney's Office of Montgomery County, by failure to follow through on bail forfeitures, has jolted the bondsmen. This appeal arises from a combination of the State's Attorney's insistence upon payment of the forfeitures and the circuit court's declination to recommend to the Governor a remission of the forfeitures either in "whole or some part thereof." *See* Md. Ann. Code art. 41, § 50.

The case *sub judice* actually involves twelve (12) different bail bond forfeitures arising from a dozen criminal cases called to trial before the Circuit Court for Montgomery County. In each case, the accused, who had been released on bail pending trial, failed to appear at the time and place designated, and the trial judge ordered the forfeiture of the bail.

Apparently as a result of an inquiry by Judge David Cahoon as to the status of the bail forfeiture situation, it was determined that there were a number of cases wherein Allegheny Mutual Casualty Company (Allegheny) was the surety for the bail, but, despite the forfeiture, no monies had been paid over to the Clerk of the Court.

Allegheny filed, in each case, identical petitions to strike the forfeiture, alleging in part that it was not notified that its bail had been forfeited. Most of the petitions also averred that the defendant had, at some subsequent time, been tried, the purpose of the bail was thus satisfied, and neither the State nor the County had incurred any "costs or expenses . . . as a result of the defendant's failure to appear" at the time originally set for trial.

All cases were consolidated and were heard by Judge Richard B. Latham who rejected all petitions, save one.

In this Court, Allegheny posits trine reasons why it believes the forfeitures should be reversed, namely:

"I. The trial court erred in refusing to grant a Surety's Petition to have certain bail

forfeitures stricken when the Surety was afforded no notice that the bond forfeitures *nisi*'s had been entered by the Court.

II. The trial court erred in refusing to grant a Surety's Petitions to have certain bail forfeitures stricken when there were no actual expenses incurred for the defendant's arrest, apprehension, or surrender in the cases.

III. Justice will be served by remanding each of the consolidated cases for a further hearing to determine the reasons for the non-appearance of the defendants below."

I.

Allegheny is of the opinion that in order for there to be a valid forfeiture the surety must be placed on notice of the entry of the forfeiture. It seemingly likens the forfeiture to a civil adversary proceeding which would require notice to the opponent. Allegheny reasons that once they are placed on notice then Md. Ann. Code art. 27, § 616½ (d) is triggered and the surety is allowed ninety (90) "days from the date of' failure to appear to produce the defendant in court before requiring any forfeiture of bail or collateral."

Allegheny's argument ignores the conditions of the very bonds that it posted to assure a defendant's appearance before the court at the scheduled time. A bond provides substantially that the defendant and the surety are jointly and severally bound to pay the State a sum of money if the defendant fails to "well and truly make his appearance before" the court and to answer to the charges. The bond is not conditioned upon notice to the surety. If the defendant fails to appear, the surety has by statute ninety (90) days in which to produce him. Of course, the court may for good cause shown set aside in whole or part a forfeiture, but the burden of demonstrating the good cause is upon the surety. Md. Rule 777 g.

This Court, in *Irwin v. State*, 17 Md. App. 518, 302 A. 2d 688 (1973), stated that the purpose of forfeiture is not to punish the surety or to enrich the coffers of the State but

rather to assure that the defendant will be found and brought to trial. In short, forfeiture is an incentive to the surety to see that his principal is present at trial. *Irwin* has no application to the instant case. Patently, if Allegheny did not know, as it says, of the forfeiture, it certainly did not have incentive to act to produce the defendant. That the defendants in the twelve cases involved in this appeal were ultimately located and tried was not because of any act on the part of Allegheny. Indeed, Allegheny seems to have been content to post the bonds and then forget the whole thing. It was only when called to make good the bonds that they awakened to what had occurred.

We think it the duty of the surety, be it corporate or individual, to follow the case on the docket and to keep itself abreast of the proceedings. We know of no rule of court or statute that requires the surety to be placed on notice by the court or clerk before the ninety-day grace period begins to run. As we see it, the surety has ninety (90) days from the time the bail is forfeited to produce the defendant. That ninety (90) days commences when the case is called, the defendant fails to appear, and the court announces the forfeiture. Of course, the court, even at the expiration of the ninety (90) days, may, in accordance with Md. Rule 777 g, ease the burden on the surety if justice requires. Whether justice does so require is a matter addressed to the sole discretion of the trial judge and will not be disturbed on appeal unless there is an abuse of that discretion.

## II.

At the hearing on the forfeitures, Allegheny informed Judge Latham that, "Part of our stipulation would be that the Chief Deputy of the Sheriff's Department ... would testify that he has reviewed ... all of the information in these [file] jackets with information in the Sheriff's Office and there have been no costs incurred by the Sheriff or Montgomery County or anyone else in connection with the taking ... of these Defendants."

The judge was of the view that the Chief Deputy was unable to make such a statement with any degree of

certainty. Judge Latham reasoned that the Deputy could say what the records of the Sheriff's office reflected, but he would be in no position to opine "costs the State of Maryland . . . [incurred in] the clerical salaries and judges' salaries and salaries of people required to do additional work because . . . [a defendant] chose not to show up . . . [for trial]. . . . I think it is unrealistic to suggest that the State of Maryland doesn't incur costs and expenses as a result of a defendant['s] not showing up for trial."

At the time of the hearing, Md. Ann. Code art. 27, § 616-1/2 (d) (1) read:

"Any court exercising criminal jurisdiction shall strike out a forfeiture of bail or collateral where the defendant can show reasonable grounds for his nonappearance. However the court shall allow a surety 90 days from the date of failure to appear to produce the defendant in court before requiring any forfeiture of bail or collateral."

Although the statute was changed by 1976 Md. Laws ch. 913, effective July 1, 1976,[1] inasmuch as the instant case was heard and decided on May 5, 1976, the statutory change is not applicable hereto.

We observe that the record is completely devoid of a showing as to "reasonable grounds for . . . [the] nonappearance" of the defendants who have been admitted to bail. One of the reasons, as we have said, for the striking of forfeitures is to encourage sureties to seek the prompt

---

1. Md. Ann. Code art. 27, § 616-1/2 (d) (1) now reads:

"Any court exercising criminal jurisdiction shall strike out a forfeiture of bail or collateral where the defendant can show reasonable grounds for his nonappearance. However the court shall allow a surety 90 days from the date of failure to appear to produce the defendant in court before requiring *the payment of* any forfeiture of bail or collateral. *The court shall strike out a forfeiture of bail or collateral deducting only the actual expense incurred for the defendant's arrest, apprehension, or surrender if the defendant is produced in court and if the arrest, apprehension, or surrender occurs more than 90 days after the defendant's failure to appear.*"

The changes made by 1976 Md. Law ch. 913 appear in italics.

apprehension of bail jumpers. When, however, as here, the surety is not even aware of the nonappearance of a defendant because of the surety's neglect in following cases in which it posted bail, the prompt apprehension theory has no application.

Our review of the record discloses that the surety's casual air of indifference led to its losses. We are unable to state that Judge Latham abused his discretion in declining, under the circumstances of this case, to strike the forfeitures.

## III.

Allegheny now would have us reverse and remand in order for it to show "reasonable grounds" for the nonappearance of the defendants when their respective cases were called for trial. Why it did not do so at the hearing eludes us. In any event, we perceive no reason for Allegheny's being allowed a second bite of the apple. It had an opportunity to present its case fully to Judge Latham. That it did not do so does not move us to remand the case and now permit Allegheny to endeavor to show, if they can, "reasonable grounds" for nonappearance.

*Judgments affirmed.*
*Costs to be paid by appellant.*